**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Patrick REGAN, Defendant–Appellant.**

**Docket No. 02–1037.**

United States Court of Appeals,
Second Circuit.

Sept. 26, 2002.

Celeste L. Koeleveld, United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Bennett M. Epstein, New York, NY, for Appellant.

Present FEINBERG, CABRANES and MAGILL,* Circuit Judges.

SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Patrick Regan, a former New York City Police Officer, appeals from an order entered on January 2, 2002, denying his post-

* Of the United States Court of Appeals for the Eight Circuit, sitting by designation.

conviction motion pursuant to Fed. R.Crim.P. 33 to dismiss the Indictment or, in the alternative, to grant him a new trial.

Regan already has completed serving his sentence on a 1997 conviction of two counts of perjury before a grand jury, and presumably continues to seek post-conviction relief to expunge his record of criminal conviction.

\* \* \* \*

Regan formerly served as an officer in a plainclothes unit (the Anti–Crime Unit) of the 34th Precinct in Washington Heights. In 1992, the United States Attorney's Office for the Southern District of New York, FBI, and NYPD Internal Affairs Bureau ("IAB") began investigating allegations of misconduct against several officers of the Anti–Crime Unit.

After two years of investigation, the government, seeking Regan's testimony against his fellow officers, immunized Regan and called him to testify before a grand jury. The numerous plain contradictions between Regan's testimony to the grand jury and tape recordings of Regan's telephone conversations that the investigating team had obtained (through proper warrants) caused the government to bring an indictment against Regan for perjury.

Regan was charged in a January 10, 1995 indictment with two counts of perjury, in violation of 18 U.S.C. § 1623 (false declarations before a grand jury or court). These charges arose out of Regan's testimony before a federal grand jury in October of 1994. Following a five-day jury trial before Judge Chin, Regan was convicted in August of 1995 on both counts.

Regan moved for a new trial pursuant to Fed.R.Crim.P. 29 and 33, alleging that his conviction should be overturned on the ground of newly-discovered evidence—the same claim he raises on the appeal now before us. The District Court denied those motions in two orders dated March 4 and March 8, 1996, and thereafter sentenced Regan to a term of imprisonment of a year and a day. We affirmed the judgment of conviction and sentence on January 6, 1997. *U.S. v. Regan*, 103 F.3d 1072 (2d Cir.1997), *cert. denied*, 521 U.S. 1106, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997). Regan filed a second motion on May 15, 1998, pursuant to Rule 33 for dismissal of the Indictment or for a new trial, claiming additional newly discovered evidence is exculpatory and reveals government misconduct in his case. The District Court denied this second motion by a memorandum decision dated January 2, 2002.

Regan appeals from the District Court's decision.

\* \* \* \*

The record in this case is extensive and the facts detailed. Only the facts strictly necessary to the resolution of this appeal are presented here.

The investigation of the Anti–Crime Unit arose out of several arrests botched by Anti Crime Unit officers. Surrounding these arrests, the investigating U.S. Attorneys uncovered sufficient credible allegations of planted evidence and other police fabrications to undermine their confidence in their ability to prosecute the arrestees-and, in fact, the United States Attorney's Office filed several *nolle prosequis* on the suspects that the Anti–Crime Unit had apprehended.

Regan participated in the arrest of Jorge Almonte, one of the individuals whose prosecution was abandoned by the government because of concerns about the officer's actions and veracity. Regan also worked closely with Anti Crime Unit officers involved in arrests of two other individuals, Nieves and Abreu, which arrests also came under investigation.

The government relied on several witnesses to corroborate a version of the three arrests different from those proffered by the officers. These witnesses included a cable installer, Juan Paradas, who had been working in Almonte's home at the time of the arrest, and José and Ramon Rodriguez, two brothers working as Drug Enforcement Administration ("DEA") informants.

In May of 1994, the government interviewed José and Ramon Rodriguez. José Rodriguez claimed that, in 1992, Regan and other members of the Anti Crime Unit had asked him and his brother Ramon Rodriguez to help find Almonte so that the officers could "set him up" by placing drugs on him. Investigators arranged for José Rodriguez to telephone Regan and to tape record the conversation.

Conversations subsequently were recorded between Ramon Rodriguez and Regan. In the first conversation, Ramon Rodriguez informed Regan that he, Ramon, would be interviewed by investigators in relation to the Almonte case. In the conversation, Regan instructed Ramon Rodriguez not to reveal any information to investigators. Investigators recorded subsequent conversations between Ramon Rodriguez and Regan, in which Regan instructed Ramon Rodriguez on how to answer investigators' questions.

The contradictions between Regan's recorded statements to the Rodriguez brothers and his testimony before the grand jury provided the basis for his indictment for perjury.

\* \* \* \*

*The newly discovered evidence*

Regan alleges that he has newly discovered evidence undermining the government's case. This evidence falls into four categories: (i) evidence concerning Almonte, specifically that the government did not disclose to the District Court or the jury that Almonte was a drug dealer, had made false claims against the Anti Crime Unit officers, and failed a polygraph test; (ii) evidence concerning Juan Paradas, the cable installer, specifically that the government misled the court and jury when it represented that Paradas was an important witness who corroborated the government's other witnesses and contradicted the police officers, and that the government failed to make a genuine effort to locate him; (iii) the government concealed statements from a witness, Brijido Idalgo, that supported the officers' version of Almonte's arrest; and (iv) the government concealed an IAB memorandum of July 31, 1996 by a Special Prosecutor concluding that there was insufficient evidence against the Anti Crime Unit officers under investigation to bring administrative action against them.

In ruling on Regan's motion, the District Court carefully evaluated each alleged item of newly discovered information and concluded that none of it bore on Regan's conviction for perjury. The basis of the perjury indictment and conviction, he stated, was that Regan, when testifying under oath before the grand jury, provided the grand jury with an entirely different account of his own actions and with entirely different information than Regan related to others in taped telephone conversations. The contradiction between what transpired in the taped conversations, and Regan's contradictory account of the same conversations and events under oath—but while he was unaware that tapes of the conversations were in the government's possession—wholly supported the bringing of the indictment and the conviction. The District Court thus held that all of the newly discovered evidence, which would go to the merits of a prosecution for police misconduct related to the Anti Crime Unit ar-

rests, was not relevant to Regan's perjury convictions.

## DISCUSSION

We review a district court's denial of a motion to grant a new trial pursuant to Fed. R.Crim. Pro. 33 for abuse of discretion. *U.S. v. Gil*, 297 F.3d 93, 101 (2d Cir.2002). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision— though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 n. 6 (2d Cir.2001).

The District Court did not abuse its discretion in denying Regan's Rule 33 motion because it did not make any errors of law or clearly erroneous factual findings, nor was its conclusion outside the range of permissible decisions, when it concluded that none of the allegedly newly-discovered evidence upon which Regan based his motion undermines confidence in the jury's verdict that Regan committed perjury before the grand jury.

As an initial matter, we specifically rejected on Regan's initial appeal the claim he again raises now: that, because the government never had credible evidence of misconduct, it did not have good reason to convene a grand jury. 103 F.3d at 1081. The government was under no obligation at Regan's trial for perjury to prove the truth of the matter upon which it convened the grand jury, *i.e.*, investigation of possible misconduct within the Anti–Crime Unit. *Id.* Whether officers of the Anti Crime Unit engaged in misconduct, and the existence of any materials tending to show that the government did not have sufficient evidence to pursue action against the Anti–Crime Unit officers under investigation, is unrelated to whether Regan lied under oath. As we held previously in affirming the District Court, the subject matter of Regan's trial had been limited to whether or not Regan perjured himself before the grand jury and the government had correctly limited itself at trial to that issue. *Id.* at 1082–83. We now address why each of the four categories of newly discovered evidence upon which Regan bases his Rule 33 motion does not support the grant of a new trial.

### 1. The Almonte evidence

The evidence related to Almonte does not warrant a new trial because (i) none of the material goes to the issue of whether Regan lied under oath, and (ii) much of the evidence was disclosed by the government to the jury at trial. The government never claimed at trial that Almonte was not a drug dealer, nor did the government claim that Almonte was telling the truth about the events surrounding his arrest. In fact, the government informed the jury that the witnesses' testimony about the events of the arrests, including Almonte's testimony, was not offered for its truth and informed the jury that Almonte had "a major motive to lie" (Trial transcript ("Tr.") 159). The government framed the issue narrowly in terms of Regan's perjury and its impact on the ability of the government reliably to prosecute cases arising out of investigations conducted by the Anti–Crime Unit, stating that the harm from Regan's perjury would be the same regardless of whether Almonte was "the biggest drug dealer in the world." (Tr. 89).

### 2. The cable installer

Regan's contention that Paradas, the cable installer, constituted the key figure in the government's case against him, and that the government failed to locate Para-

das for trial in bad faith, are similarly unavailing. While Paradas provided important testimony contradicting the Anti–Crime Unit officers' account of Almonte's arrest, Paradas' testimony was of limited relevance to the perjury charge against Regan. Rather, the key evidence of perjury in Regan's trial came from Regan's statements before the grand jury contradicting his statements in taped telephone calls to the DEA informants, José and Ramon Rodriguez. Independent corroborating evidence of Regan's perjury also came from the testimony of numerous NYPD officers. The limited reliance upon, and relevance of, Paradas' account of the Almonte arrest renders insubstantial Regan's claim that he deserves a new trial based upon the government's failure to find Paradas. Furthermore, Regan has failed entirely to allege that the government's failure to locate Paradas resulted from lack of diligence.

*3. Witness statement of Brijido Idalgo*

Regan claims that the government concealed exculpatory material in IAB Report # 21, which contains an interview with a neighbor of Almonte's, Brijido Idalgo. Examination of this report reveals that it materially contradicts Regan's account of the arrest and confirms Almonte's. However, even were Idalgo's statements to confirm Regan's account of Almonte's arrest, it would be immaterial to Regan's conviction for lying under oath before the grand jury because the events of Almonte's arrest were not at issue in Regan's trial.

*4. NYPD Memorandum of July 31, 1996*

Regan claims that the Memorandum of July 31, 1996 substantiates his claim that there was no evidence of Anti Crime Unit misconduct and that the investigators—the United States Attorney's Office, the FBI, and the IAB—were not conducting a *bone fide* investigation. While the question of whether the Anti Crime Unit officers engaged in misconduct and whether Regan committed perjury before the grand jury are distinct, with only the latter question at issue, the Memorandum does not support either the contention that the investigation was not *"bona fide"* or that Regan did not commit perjury. The Memorandum in question is addressed "FILE," and bears a date more than a year following the conclusion of Regan's trial. The Memorandum never was provided to the United States Attorney's Office, and therefore could not have been withheld from the defense.

The Memorandum appears on its face to record the basis upon which the Department Special Prosecutor determined not to pursue administrative charges against the officers involved in the Almonte arrest. No material contained in the Memorandum bears upon Regan's grand jury testimony, but only upon the sufficiency of the evidence supporting possible proceedings against the other Anti Crime Unit officers. As such, it could not have exculpated Regan on the perjury charge and does not provide the basis for a new trial.